The San Antonio & Aransas Pass Railway Company
v. Fannie Long et al.

No. 172.

1. Pleading—Damages.

Plaintiffs suing for damages for negligently causing the death of their mother, alleged that deceased "during her lifetime aided in the support and maintenance of each one of the plaintiffs, cared for them in sickness and at other times, and that her house was their home whenever they desired to make it such, and that each had every reasonable expectation that in case she had lived she would have continued to aid and assist in the maintenance of each of them as aforesaid; and they aver that by her death each of them has been deprived of her motherly care and assistance, and her said support and maintenance," stating aggregate amount of damages claimed. The allegations were excepted to as vague and indefinite. *Held*, that the exceptions were properly overruled. It was not necessary that the nature of the aid extended to each should have been specially alleged................................. 152

2. Evidence of Damages.

See evidence held competent as tending to show pecuniary loss by adult children suing for damages for causing their mother's death. It was also competent to prove that the deceased had revenue from rents and from interest on money loaned, which she devoted to the aid of her children...................................................... 153

3. Opinion Improperly Admitted.

One of plaintiffs by deposition testified, and was asked: "If you state that she (the deceased mother of plaintiffs) did aid in the support of her children, please state whether they had any expectations that she

would continue such support during her life; if yea, state the facts, if any, upon which such expectations were based?" Answer: "Each of said children had the expectation that she would continue to aid them if she had lived. This expectation is based upon the fact that she was a kind and affectionate mother, and had aided them during her life." *Held*, that so much of the question as sought to elicit the opinion of the witness. and so much of the answer as gave that opinion, should have been excluded .................................. 153

### 4. Competent Testimony in Reduction of Damages.
Suit by four daughters and two sons, all adults, and only three residing with their mother, for damages for causing her death. It was in evidence that she had property in value $18,500, and had an income of about $1800 per annum, all of which, less $250, had been used in assisting her children. The defendant offered the will and probate by which deceased had left all her property to her four daughters. This testimony was excluded. *Held*, where the only aid the beneficiaries have received from the deceased during life had been a part of the income of the property, and where upon the death the title to the corpus of such property vested in plaintiffs, such facts should be admitted in evidence to be considered by the jury in mitigation of damages. The will was improperly excluded ....................................... 156

### 5. Measure of Damages—Benefits from Labor of Deceased.
It was not error to refuse an instruction that the plaintiffs were entitled to recover only for the loss of such pecuniary benefits to them as would have resulted "from the mental or bodily labor" of the deceased..... 159

### 6. Data for Damages should be Proved.
While damages in actions of this nature are necessarily indeterminate, and while much must be left in almost every case of the kind to the sound sense of the jury. it does not follow that plaintiffs need not prove with a reasonable degree of certainty the data from which their compensation is to be assessed....................................... 159

ERROR to Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Judgment for $4500 against the plaintiff in error for negligently causing death of the mother of the plaintiffs. The judgment was affirmed by Court of Civil Appeals.

The opinion gives a statement of the case.

*Upson & Bergstrom*, for plaintiff in error, argued: The main question presented on appeal is the measure of damages, if any, the plaintiffs are entitled to recover, and appellant contends that appellees' pleading, as well as the charge of the court, is based upon the erroneous theory of the measure of damages they are entitled to recover.

Appellant contends, that the true measure of damages is such an amount of money as will compensate them for the loss they have sustained by reason of the death of their mother; that is to say, such a sum as deceased could probably have earned by her mental or bodily labor during the re-

mainder of her life, whether such earnings were devoted to the support of her children or were added to her property and tended to increase her estate which her children had a right to inherit upon the death of their mother; and for the purpose of enabling the jury to arrive at the proper measure of damages, it was competent to show the age of the deceased, her habits, her occupation, if any, and her ability to earn and accumulate money and property; and it was immaterial whether such earnings were being then devoted to the support of the plaintiffs or whether they were added to the estate.

The lower court, however, submitted the cause upon the theory that the plaintiffs' damages were to be measured by the pecuniary aid and support which they had a right to expect to receive from their mother during the balance of her lifetime, judged by sums of money and articles of value which she had been furnishing them prior to her death, regardless of the question whether such articles of value and money were furnished them out of her personal earnings or the principal or income of her estate; and that conclusion is arrived at from the proposition that the defendant company had no right to show, in diminution of damages, that such contributions were derived solely as income from deceased's property, and that said property which had produced the income vested in the plaintiffs by the will of the deceased.

The proposition is not denied, that where a railway negligently causes the death of a person, it is bound to respond in damages to his children such an amount of money as the deceased could have earned during the balance of his life and to the extent it would have increased the estate of the deceased, and that such damages could not be diminished by showing that such surviving children received a direct benefit by the death of the injured person, and the immediate inheritance of his property or otherwise; but that is not the question presented in this case. The sole question is, Are the surviving relatives limited in their recovery to such sums of money as the deceased would have earned by her mental and bodily labor during the balance of her life, less the amount thereof which she would have used for her own support? This we contend must be answered in the affirmative and must require a reversal.

*Houston Bros.*, also for plaintiff in error.—1. Evidence of pecuniary benefit to plaintiffs by reason of inheritance of property or money from their deceased parent could not be pleaded in offset or reconvention to plaintiffs' right to recover for her negligent killing; but in cases of death by wrongful act, all evidence showing the mental or physical capacity of deceased to earn money, and all evidence showing the amount of contribution plaintiffs might have the right to expect had she survived, and whether or not plaintiffs have been deprived of the source of such expected contributions, is admissible and material in order to determine the amount

which plaintiffs should recover.  Carroll v. Railway, 26 Am. and Eng. Ry. Cases, 268; McGown v. Railway, 20 S. W. Rep., 80; Railway v. Johnson, 78 Texas, 542; Railway v. Henry, 75 Texas, 224.

2. In cases of death by wrongful act, plaintiffs are only entitled to recover such pecuniary loss as they may have sustained by reason of the loss of contributions which they had a right to expect from the mental or physical earnings of deceased.  McGown v. Railway, 20 S. W. Rep., 80; Railway v. Johnson, 78 Texas, 542; Railway v. Henry, 75 Texas, 224; Railway v. Warner, 19 S. W. Rep., 449; Railway v. Wilson, 48 Fed. Rep., 57.

*Denman & Franklin,* for defendants in error.—The court did not err refusing to permit the will of the deceased to be introduced, as same was immaterial to any issue in the case.  If plaintiffs were damaged to the extent found by the verdict, defendant had no interest in the apportionment of the damages.  Defendant can not set off, either in offset or in diminution of damages resulting from its tort, the values of the devise or inheritance from the deceased to plaintiffs.  Such a defense is opposed to public policy.  Besides, the undisputed evidence showed that deceased managed her property, reinvested her income, collected her rents, and was a careful business woman, and that she devoted her surplus income to support of plaintiffs, and they therefore suffered a pecuniary loss by these gifts, and an increase of the deceased's property by her labors being cut off by her death.  This caused them a direct pecuniary loss, not compensated for by an inheritance of the property owned by their mother when killed by defendant.  This loss they were authorized to consider by the charge of the court, but could not consider under the special charges asked.   Pyne v. Railway, 2 Am. Law Reg., N. S., 234; Railway v. Kirk, 1 Am. and Eng. Ry. Cases, 46; Kellogg v. Railway, 79 N. Y., 72; Terry v. Jewett, 78 N. Y., 338; Railway v. Barron, 72 U. S., 90; Railway v. Thompson, 13 Am. and Eng. Ry. Cases, 464; Carroll v. Railway, 26 Am. and Eng. Ry. Cases, 268; 3 Suth. on Dam., 284, 269; Thomp. on Carr., 471; Patt. Ry. Law, 474–494; Tiffany on Death by Wrongful Act, secs. 159, 167, 172, 176, and notes; Railway v. Dickerson, 59 Ind., 324; Railway v. Thompson, 56 Ill., 138.

Generally, as to measure of damages: Railway v. Compton, 75 Texas, 667; Galveston v. Barbour, 62 Texas, 174; Railway v. Ormond, 64 Texas, 490; Railway v. Spicker, 61 Texas, 427; Brunswig v. White, 70 Texas, 504.

GAINES, Associate Justice.—The plaintiffs in the trial court, the defendants in error in this court, are the sons and daughters of Mrs. M. C. Long.  They brought this suit under the statute to recover damages for injuries resulting to them from the death of their mother, which was al-

leged to have been caused by the negligence of the defendant, the San Antonio & Aransas Pass Railway Company. The petition alleged that the youngest of plaintiffs was 24 years old on the day of the accident which resulted in Mrs. Long's death.

The allegations of the petition with reference to the damages were as follows:

" Plaintiffs aver, that said M. C. Long during her lifetime aided in the support and maintenance of each one of plaintiffs, cared for them in time of sickness and at other times, and that her house was their home whenever they desired to make it such, and that each had every reasonable expectation that if said M. C. Long had lived she would have continued to aid and assist in the support and maintenance of each of them as aforesaid; and they aver that by her death each of them has been deprived of her motherly care and assistance and her said support and maintenance, all in their damage in the sum of $15,000."

These allegations were specially excepted to, substantially upon the ground that they were vague and indefinite. The court overruled the exceptions, and we think there was no error in that ruling. It is contended, that the petition should have averred specially the nature of the aid extended by Mrs. Long in her lifetime to each of the plaintiffs. The fact that the deceased during her life contributed to support of her children is evidence to be considered by the jury in determining the pecuniary loss sustained by them by reason of her death; and it may be that in a case like this, in which the children are all adults and no longer abide under the parental roof, some evidence of a like character or effect is necessary in order to justify a recovery of damages. Such facts are not in themselves substantive facts which justify a judgment, and being mere matters of evidence, are not required to be pleaded either in detail or with any great degree of particularity.

The following answer of Fanny Long, one of plaintiffs, was permitted to be read from her deposition, over the objection of the defendant: " Said M. C. Long did aid in the support of all her said children; her house was a home for any and all of them whenever they desired to make it so. Fannie Long, Emma Long, and Edward Long lived with her, when not absent from home. She also furnished Emma Long money for her support and to pay for medicine and medical attention when needed. She also aided in the support of said Florence Bartow by remitting money to her at different times. She aided Arthur Long the same way. She also aided Edward Long with money, and also assisted him in the support of his children by giving them presents of clothes, etc. She was a woman of simple tastes and habits, and was always ready to aid her children with her means, whenever they needed aid."

The answer was properly admitted. It was an issue in the case, whether or not plaintiffs had suffered any pecuniary loss from the death

of their mother. The testimony tended in a general and somewhat imperfect way to support the plaintiffs' case upon that issue, and therefore it was not irrelevant. It was the defendant's right to have more specific answers upon cross-examination, and the record shows that it availed itself this right.

We are also of opinion that there was no error in admitting the testimony of Fanny Long, to the effect that her mother had an income from the rents of property and interest on loans, and that she devoted it to the support of herself and children.

The plaintiffs were also allowed to read in evidence to the jury the following question and answer from the deposition of the same witness:

"If you say that she (meaning M. C. Long) did aid in the support of her children, please state whether they had any expectations that she would continue such support during her life; if yea, state the facts, if any, upon which such expectations were based."

Answer: "Each of said children had the expectation that said M. C. Long would continue to aid them if she had lived. This expectation is based upon the fact that she was a kind and affectionate mother and had aided them during her life."

So much of the question as sought to elicit the opinion of the witness, and so much of the answer as gave that opinion, should have been excluded. The case comes within neither of the well defined exceptions to the rule, that the opinion of a witness is not admissible. The witness should have been confined to a statement of the facts, and the jury should have been left to draw their own conclusion.

The only witness who testified as to the family relations of the plaintiffs and the deceased, and as to the facts affecting the amount of damages, was Miss Fanny Long. In addition to the portions of her testimony which have already been set out, she deposed, in substance, that the deceased left surviving her neither father nor mother, and that the plaintiffs—two sons and four daughters—were her only children. The deceased mother, at the time of her death, had property amounting in value to $18,500, and the income of her property was about $1800. All of this, except about $250 which was used in her own support, she devoted to the assistance of her children. She was cross-examined on this subject, but was unable to give either the dates or amount of any donation, nor the amount in the aggregate, that any one received in any one year. One received remittances of money, the children of another were given clothing, and others occasionally lived with her at her expense. All the children were of full age at the time of their mother's death. Three of them only resided permanently with her. Such was the substance of the testimony upon the question of damages.

Such being the evidence adduced by the plaintiffs upon the question of the amount of damages, the defendant offered in evidence the will of

Mrs. M. C. Long, duly probated, in which she devised and bequeathed all of her estate to her four daughters. To the reading of the will in ·evidence the plaintiffs objected, and their objection was sustained, and the evidence excluded. This action of the court raises the serious question in this case; and it is one which is of first impression in this court.

In an action for injuries resulting in death, can the defendant show, for the purpose of reducing the damages, that the plaintiffs have received by devise or descent property from the estate of the deceased? If such evidence be admissible in any case of like character, it was certainly admissible in this case. The authorities are not numerous, and the expressions of the courts are in an apparent conflict upon the question.

Among the cases relied upon in support of the negative is that of Railway v. Barron, 5 Wallace, 90. The defendants asked the court to charge the jury, "that if the persons for whose benefit this action is brought have received in consequence of the death of said Barron, and out of his estate inherited by them from him, a pecuniary benefit greater than the amount of damages which could under any circumstances be recovered in this action, then as a matter of law they have by the death of said Barron sustained no actual injury for which compensation can be recovered in this action." Upon error to the Supreme Court of the United States that court held, in effect, that the charge was properly refused.

The trial court had, however, charged the jury, among other things, as follows: "In this case the next of kin are the parties who are interested in the life of the deceased. They were interested in the further accumulations which he might have added to his estate, and which might hereafter descend to them. The jury have the right, in estimating the pecuniary injury, to take into consideration all the circumstances attending the death of Barron; the relations between him and his next of kin, the amount of his property, the character of his business, the prospective increase in wealth likely to accrue to a man of his age with the business and means which he had. There is a possibility in the chances of business that Barron's estate might have decreased rather than increased, and this possibility the jury may consider. The jury may also take into consideration that he might have married and his property descended in another channel. And there may be other circumstances which might affect the question of pecuniary loss, which it is difficult for the court to particularize, but which will occur to you. The intention of the statute was to give a compensation which the widow, if any, or the next of kin might sustain by the death of the party, and the jury are to determine as men of experience and observation from the proof what this loss is."

It is apparent, we think, that evidence had been admitted of property received by inheritances by the beneficiaries from the estate of the deceased, and the case can not be considered as a decision upon the question of the admissibility of such evidence. The court do not even discuss the charges

given and refused, but in course of their opinion say in a general way: "The statute in respect to this measure of damages seems to have been enacted upon the idea, that as a general fact the personal assets of the deceased would take the direction given them by law, and hence the amount recovered is to be distributed to the wife and next of kin in proportion provided for in the distribution of personal property left by a person dying intestate. If the person injured had survived and recovered, he would have added so much to his personal estate, which the law on his death, if intestate, would have passed to his wife and next of kin; in case of death by the injury the equivalent is given by a suit in the name of his representative."

The suit was brought under the statute of Illinois, which made the widow and next of kin the beneficiaries of the recovery, and directed that the amount recovered should be divided among them "in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate."

The court seems to proceed, in part at least, upon the theory, that the damage which the statute is intended to compensate is the loss which accrues to the widow and next of kin of the deceased as distributees of his estate, by reason of his premature death; such loss being the difference between what the deceased actually left and what he would have left had not his life been cut short by the wrong of the defendant. That difference would seem to be his probable future savings had he lived. The proportion in which the recovery is to be distributed tends to indicate that this was the leading consideration in providing the right of action; for if the loss of any individual benefits, capable of pecuniary estimation, which would probably have accrued to any beneficiary during the life of the deceased, was to be compensated, it would seem that the statute would have provided that such beneficiary should recover such compensation for himself alone.

It must, however, be conceded, that the decisions of some of the courts upon similar statutes recognize the rights of minor children at least to recover for the loss of individual pecuniary benefits which would probably have enured to them by the continuance of the life of their parent. Tilley v. Railway, 24 N. Y., 471; same case, 29 N. Y., 252; Terry v. Jewett, 78 N. Y., 338.

Under the statutes of New York, the recovery is for the benefit of the next of kin, and is to be then also apportioned as under the statute of descent and distribution. It is worthy of remark, that under such a statute the recovery may go to remote collateral kindred, who have no interest whatever in the life of their relative, except the prospective shares they may receive as distributees of his estate upon his dying intestate. Where such is the loss to be recompensed, it is no answer to the plaintiff's demand to say to him, that he has not been damaged because

he has received a pecuniary benefit from the death of the deceased. His ground of complaint is not that he has been deprived of receiving anything, but that the amount which has come to him is less than it would have been if the life of the deceased had been prolonged.

There would seem to be an important difference between statutes which give the right of action to the next of kin as such, and the statute of this State, which undertakes to confer compensation upon the husband or wife and the children and parents of the deceased only, and which requires that the jury shall determine separately the amount to be recovered by each of the beneficiaries.

Where the right of action is given for the benefit of the next of kin, and the sum recovered is to be apportioned as under the statute of descent and distribution, it would seem that the leading purpose is to give compensation for some loss suffered by them all in common; that is to say, the damage which has accrued to them as next of kin by reason of the loss of a prospective increase in the amount of the estate to be distributed. Our statute excludes from its benefits the collateral kindred, and its leading purpose seems to be to compensate only such near relatives of the deceased as may be dependent upon him for support or other aid of pecuniary value, or such as may have been the recipients of such aid or support.

It may be that in statutes of the one class, special injury to one beneficiary may be considered and compensated, though it is difficult to see why the recovery for such loss should be distributed in a fixed proportion among all. And it may be, also, that under our statute the loss of a prospective increase of inheritance may be an element of damages.

But under the latter, each beneficiary recovers for his own special injury. The damages must be actual and for loss of a pecuniary nature. Nothing is given by way of solace. Under such a law we can not see how it can be maintained that one has been damaged by the death, when he has received from the estate of the deceased property exceeding in value all the prospective benefits which would have accrued to him had the death not ensued.

Let us suppose that a wealthy son contributes to his aged parent a fixed sum, say $100 annually, and that from the wrongful act of another he dies, leaving such parent by his will a legacy of $10,000. Can it be reasonably asserted that the parent has suffered any pecuniary loss by the death of the son? But we need not go outside of this case for an illustration.

If there was any great disparity in the aid extended by Mrs. Long in her lifetime to each of her children, the evidence does not disclose it. By her will she left her property, amounting to nearly $20,000 in value, to her daughters, and gave her sons nothing. If the sons shared equally in her bounty with her daughters during her life, can it be said that their

loss is no greater than that of the daughters? It seems to us absurd to say so.

It will not do to say, as some of the courts have said, that to permit a defendant in a case of this character to show that the plaintiff had received a pecuniary benefit resulting from the death of the deceased, would enable a wrongdoer to protect himself against the consequences of his wrong. Except for willful misconduct or gross negligence exemplary damages are not allowed by the statute. In other cases actual damages only are given, and the recovery is free from any element whatever of a penal nature. The argument is not a legitimate application of the principle, that a wrongdoer can not take advantage of his own wrong. Its main support rests upon a sentiment—a consideration which should not be resorted to in order to change the provisions of the written law. The statute is intended in case of mere ordinary negligence to give compensation for a pecuniary loss; and the question is, what is the amount of this loss, if any? This is a practical question, and it should in any such case be tried and determined in a reasonable and practical manner.

The English statute, known as Lord Campbell's Act, upon which most if not all of the statutes of a like character in this country have been modelled, is in respect to the beneficiaries very nearly the same as the statute of this State. The action is for the benefit of "husband, wife, parent, and child" of the deceased, and the jury are to apportion the damages among the beneficiaries. The only substantial difference is that Lord Campbell's Act provides, that under the term "parents" shall be included "grandparents."

In an action brought under that act Lord Campbell himself, who presided at the trial, instructed the jury that in assessing the damages they should take into consideration the amount received by the beneficiaries on an accident insurance policy held by the deceased. Hicks v. Railway, cited in note to Pym v. Railway, 4 B. & S., 403.

Speaking of this case, Baron Bramwell, in Bradburn v. Railway, Law Reports, 10 Exchequer, 1, says: "As to the case of Hicks v. Newport, etc., Railway Company, that was an action under Lord Campbell's Act, and the ruling is quite correct. The statute had laid down no rule as to the mode of calculating the damages to be given in respect of the right of action which it created. The rule was first laid down by this court, and that rule was, that the damages were to be a compensation to the family of the deceased equivalent to the pecuniary benefits which they might have reasonably expected from the continuance of his life. If, therefore, the person claiming damages was put by the death of his relative into possession of a large estate, there was no loss; he was a gainer by the event; and similarly whatever comes into the possession of the family who have suffered by the death of their relative, by reason of his death, must be taken into the account."

In Jennings v. Grand Trunk Railway Company, Law Reports, 13 Appeals, 800, it is said, " that all the circumstances, though insufficient to exclude a statutory claim, may be legitimately pleaded in diminution of it, ought to be submitted to the decision of the jury, whose special function it is to assess the damage, with such observations by the presiding judge as may be suggested by the facts in evidence. It appears to the court that money provisions made by a husband for the maintenance of his widow, in whatever form, are matters proper to be considered by the jury in estimating her loss; but the extent, if any, to which these ought to be imputed in the reduction of damages must depend upon the nature of the provision and the position and means of the deceased. Where the deceased did not earn his own living, but had an annual income from property, one-half of which has been settled upon his widow, a jury might reasonably come to the conclusion, that to the extent of that half, the widow was not a loser by his death, and might confine their estimate of her loss to the interest which she might probably have had in the other half."

This is from a decision of the Privy Council in a case arising under a Canada statute which is the same as Lord Campbell's Act. But neither the expressions on this question in the case last cited nor in Bradburn v. Railway, supra, are authoritative. The point was not involved in either case; and yet they are entitled to weight as the opinion of very able judges. The Court of the Exchequer Chamber took substantially the same view of the question, as is shown by the case of Pym v. Railway, supra.

On the other hand, there are several decisions which hold that proof that a beneficiary has received money from a policy of insurance on the life of the deceased can not be received for the purpose as reducing the damages. Althorf v. Wolf, 22 N. Y., 355; Sherlock v. Alling, 44 Ind., 184; Harding v. Townshend, 43 Vt., 536; Railway v. Wightman, 29 Grat., 431; Carroll v. Railway, 88 Mo., 239; Railway v. Meigs, 74 Ga., 857.

Statutes giving damages for injuries resulting in death necessarily deal with probabilities; so that where there is a policy on the life of the deceased payable to the beneficiaries, under the statute the probability is or may be that if the deceased had continued to live the beneficiaries would ultimately have received the insurance money. Hence they have gained nothing by the premature death, except an acceleration of the payment. Perhaps sound principles would require the jury to take into consideration the use of the money during the period of acceleration. Jennings v. Railway, supra.

But however that may be, the case is very different when the only aid which the beneficiaries have received from the deceased during his life has been a part of the income of his property, and when upon his death the title to the corpus of such property absolutely vests in them, and we are

therefore of the opinion that in a case involving similar facts, they should be admitted in evidence, to be considered by the jury.

We conclude that the court erred in excluding the will of Mrs. Long, and that for this error the judgment must be reversed.

There are other questions presented by the writ of error, but we need not consider them either at length or in detail. They were correctly disposed of by the Court of Civil Appeals. There is, however, one point which we desire to notice. It is insisted, that the court should have charged the jury, in effect, that the plaintiffs were entitled to recover only for the loss of such pecuniary benefits to them as would have resulted " from the mental or bodily labor " of the deceased. The object of the refused charge was to exclude from the consideration of the jury prospective benefits which might have accrued to the beneficiaries from that portion of the income of deceased which proceeded from her property. From what has already been said, it is apparent that we think that the charge was correctly refused.

The contention of plaintiffs in error seems to be based upon the case of Railway v. Butler, 57 Pennsylvania State, 335, in which the court in their opinion say: "After an attentive examination and review of all the cases which have heretofore been decided, we are of the opinion, that the proper measure of damages is the pecuniary loss suffered by the parties entitled to the sum to be recovered—in this instance the children of the decedent—without any solatium for distress of mind; and that loss is what the deceased would probably have earned by his intellectual and bodily labor in his business or profession during the residue of his lifetime, and which would have gone for the benefit of his children, taking into consideration his age, ability, and disposition to labor and his habits of living and expenditure."

The rule thus announced is doubtless correct as applied to the facts of the particular case, and it may be applicable generally under the statute of Pennsylvania. It does not apply under the statute of this State to a case like the present, in which the prospective aid was mainly, if not wholly, from the income of property, and in which, upon the death, some of the beneficiaries take by bequest all the estate, and others get none.

In conclusion, we will say, that while the damages in actions of this nature are necessarily indeterminate, and while much must be left in almost every case of the kind to the sound sense of the jury, it does not follow that the plaintiffs need not prove with a reasonable degree of certainty the data from which their compensation is to be assessed, when it is practicable to do so. When the beneficiaries are adults, and the loss of prospective benefits is based upon assistance in the way of money or other things of value received in the lifetime of the deceased, it is certainly within the power of each beneficiary to show by his own testimony with some degree of accuracy the amount of the benefits so received. And it

would seem that his failure to testify specifically to the facts ought to be deemed a circumstance against him sufficient to justify the trial court in setting aside the verdict, provided it be apparently excessive.

The judgments of the Court of Civil Appeals and of the District Court are reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 14, 1894.