[S. F. No. 6195. In Bank.—March 2, 1915.]

MAUD McLAUGHLIN et al., Respondents, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

Negligence—Action by Children for Death of Parent—Damages—Evidence as to Property Inherited from Deceased Inadmissible.—In an action by the children and heirs at law of a deceased parent, to recover damages for her death by reason of the negligence of the defendant, the latter is not entitled, for the purpose of reducing the amount of the recoverable damages, to offer evidence as to the character and value of the property of the parent which had come into the ownership of the plaintiffs as the result of the death.

Id.—Instructions—Pecuniary Value of Life of Parent.—Where the jury are otherwise fully and fairly instructed as to the various elements of damages recoverable in such action, it is not error to refuse an instruction requested by the defendant that "the pecuniary value of the life of the deceased to the plaintiffs is the value in money of the life of said decedent to the plaintiffs at the time of her death."

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

William M. Abbott, William M. Cannon, and Kingsley Cannon, for Appellant.

Sullivan & Sullivan and Theo. J. Roche, for Respondents.

HENSHAW, J.—Plaintiffs are the children and heirs at law of Margaret McLaughlin, a widow, whose death was occasioned by the admitted negligent act of defendant. Two of the children, Maud and Ralph, had attained their majority. Juanita, at the time of her mother's death, was a minor, aged seventeen years. The jury returned a verdict in favor of the plaintiffs for the sum of seven thousand five hundred dollars. From the judgment which followed and from the order of the court denying defendant's motion for a new trial this appeal is prosecuted. Upon the appeal the principal question urged and argued is the error of the court in refusing to admit certain evidence offered by defendant. The case was first heard

and decided in Department, and a reconsideration of it was ordered before the court in Bank because the question of the admissibility of the evidence here presented is new in this state, and in other states there is a contrariety of judicial opinion upon it.

Mrs. McLaughlin was a woman of refinement and of executive ability. Upon the death of her husband, a physician, she successfully conducted a drug store, which business brought in a net income of two hundred and fifty dollars a month. In addition to this she had a fixed income by way of rentals from real property of about eighty-five dollars a month. The offered and rejected evidence was the inventory and appraisement and decree of final distribution in her estate. In .short, it was evidence showing that the children—plaintiffs herein—had by the death of the mother come into the ownership of all of her property. The contention of the defendant upon the offer was that this evidence, showing what property the children had received because of the death of the mother, was not only proper but necessary for the consideration of the jury in the latter's effort to arrive at and declare in terms of money the loss with which the children had met because of her wrongful death, and that this is peculiarly and especially true as to the sum of eighty-five dollars a month from rentals, which monthly sum represented a return in nowise dependent upon the skill, ability, or exertions of the deceased; that the exclusion of this evidence would necessarily result in a verdict by the jury greater than is warranted by the law.

At common law no right of action existed in favor of any one for the wrongful death of another. Human life was considered to be of such a character that its wrongful destruction could not be measured in terms of money. Where, therefore, such an action exists, it is the creature of statute. It is so in England by virtue of Lord Campbell's act (Stats. 9 and 10, Victoria, chap. 93). It is so in many of the states of the United States. These statutes differ in important respects. Thus in England and in some of the states, while the action may be brought by all of the heirs, there is the wise provision that the award shall be segregated amongst the heirs, for manifestly the loss by the death of a mother to a dependent minor daughter is much greater than the loss by the death of the same parent to an adult self-supporting son. Some states in turn, because of the difficulty which they thought

the jury would experience in making the award, have limited the maximum amount to various named sums. In this state (Code Civ. Proc., sec. 377) the jury is advised that it may give "such damages as under all the circumstances of the case may be just." Upon two propositions, however, all the statutes and all the decisions are agreed, that compensation for grief and wounded feelings is not a legitimate element of the damages to be assessed, nor is the suffering of the injured person—though a matter for which he, had he lived, might recover, an element of the compensation of the plaintiffs. Indeed it may be said that upon the fundamental principle governing the award in such cases all of the authorities are in harmony. The elements of damage differ, as, for example, the elements of damage to a husband for the loss of his wife are not identical with the elements of damage to the minor children for the loss of their mother. But fundamentally the law seeks to compensate in terms of money for the loss (in the case here of children) of their reasonable expectations of financial benefit from the continued existence of the parent, including in this money estimate the loss of the nurture, instruction, training, and care, of which the children have been deprived. These latter elements are not here in question, and what is said has no reference to them. Our concern is solely with the question of the direct material, property loss and of the legitimate evidence bearing upon that consideration.

The English courts adopted the broad view that whatever of property the plaintiffs could be shown to have received through the death was competent evidence for the consideration of the jury in their effort to determine the amount of damage occasioned by the death. Thus, the English courts held that if a father had nothing and earned nothing and contributed nothing to the support of his family, the heirs' recovery under the statute should be nominal; that if the father's income was from fixed property, wholly independent of his own exertions, and this property went to plaintiffs, this could be shown to lessen the amount of the damages which might otherwise be awarded. Lord Campbell instructed his jury that the amount of an accident policy which the plaintiffs had received should be deducted from any award made to them. He thought that deduction should also be made on account of a regular life insurance policy, and suggested the

nature of the allowance. But he ended his advice to the jury in this regard, by "leaving the matter, however, entirely in your hands." (*Pym* v. *Great Northern Ry. Co.*, 4 Best & Smith, 403; *Bradburn* v. *The Great Western Ry. Co.*, 10 Exch. 1; *Jennings* v. *Grand Trunk Ry. Co.*, 13 App. Cas. 800.) Diametrically opposed to this line of authority are the decisions of many of the courts of the United States, holding, for the reasons hereinafter considered, that it is not permissible to present such evidence to the consideration of the jury. While occupying a middle ground are cases typified by one which is perhaps the most quoted—*San Antonio Ry. Co.* v. *Long*, 87 Tex. 156, [47 Am. St. Rep. 87, 24 L. R. A. 637, 27 S. W. 116]. Certain expressions in the Long case would seem to carry the doctrine of the Texas court to the full extent of the English decisions, as "under such a law we cannot see how it can be maintained that one has been damaged by the death when he has received from the estate of the deceased property exceeding in value all the prospective benefits which would have accrued to him had the death not ensued." But the force of this general language is much modified by later decisions. (*Gulf, etc. Co.* v. *Younger*, 90 Tex. 387, [38 S. W. 1121]; *Tyler, etc. Ry. Co.* v. *Rasberry*, 13 Tex. Civ. App. 186, [34 S. W. 794]; *Lipscomb* v. *Houston, etc. Ry. Co.*, 95 Tex. 5, [93 Am. St. Rep. 804, 55 L. R. A. 869, 64 S. W. 923]; *Houston, etc. Co.* v. *LeMair*, 55 Tex. Civ. App. 237, [119 S. W. 1162].) In short, the Texas courts have shown no disposition to put into judicial effect the language of the Long case above quoted. And yet it must be apparent that there is no logical middle ground such as that sought to be established in the Long case. The English doctrine is at least logical, in allowing all of the evidence of this character to go before the jury. It is certainly extremely illogical to admit certain evidence and refuse consideration to other evidence of like character tending equally to establish the controverted issue,—namely, the amount of damage sustained. The other doctrine, which may be designated the American doctrine, since it finds acceptance in most of the courts of the United States, announces, as has been said, the diametrically opposite view, that none of this evidence is admissible and none of it is entitled to the jury's consideration. The best reasoned of these cases is *Stahler* v. *Philadelphia Ry. Co.*, 199 Pa. 383, [85 Am. St. Rep. 791, 49 Atl. 273]. While the discussion is all of interest and value,

we must content ourselves with a brief quotation, which succinctly presents the view in opposition to that of the English courts: ''The true question is, what had these plaintiffs the right to expect to receive from the parent during his life? and for the loss of this they are to be compensated. What they got after his death does not enter into the case. The loss spoken of is the taking away of that which they were receiving, and would have received had he lived. It is the destruction of their expectations in this regard that the law deals with, and for which it furnishes compensation. To say, 'True it is we have taken from you his benefactions, but you get by law, not from us, but from his estate which we thus make available for you, something better,' is to substitute the heirs' legal right under the law for the company's liability.'' This rule of evidence has its foundation in the refusal of the court to allow the defendant to benefit by his own wrong, to lessen his responsibility in damages for the injury which he has inflicted, by a showing that, quite fortuitously, through no contribution of defendant's own, the plaintiffs have received a certain pecuniary benefit.

As we have said, there is no tenable middle ground and no sound fluctuating rule of evidence. Under the English view all such evidence is admissible and logically admissible. Under the American view such evidence is in its nature base, is founded upon the tort of the party who seeks to avail himself of it, and should not be admitted; therefore the law will admeasure the consequences of the defendant's act by the situation existing at the time of the act, and not by after-accruing consequences. That this, as has been said, is the American view, is established by numerous cases viz.: *Kellogg* v. *New York Cent. etc. R. R. Co.,* 79 N. Y. 72; *Althorf* v. *Wolfe,* 22 N. Y. 355; *Geary* v. *Metropolitan St. Ry. Co.,* 37 App. Div. 441, [77 N. Y. Supp. 54]; *Illinois Cent. Ry. Co.* v. *Barron,* 72 U. S. 90, [18 L. Ed. 591]; *Ladd* v. *Foster,* 31 Fed. 833; *Clune* v. *Restine,* 94 Fed. 749, [36 C. C. A. 450]; *Chicago etc. Co.* v. *Hambel,* 2 Neb. (Unof.) 607, [89 N. W. 643]; *Houston* v. *Gran,* 38 Neb. 687, [57 N. W. 403]; *Western Ry.* v. *Meigs,* 74 Ga. 867; *Harding* v. *Townsend,* 43 Vt. 536, [5 Am. Rep. 304]; *Carroll* v. *Missouri Pac. Railway Co.,* 88 Mo. 239, [57 Am. Rep. 382]; *Sloss* v. *Sheffield Co.,* 144 Ala. 280, [40 South. 211]; *Chicago etc. Ry. Co.* v. *Holmes,* 68 Neb. 826, [94 N. W. 1007]; Tiffany on Death by Wrongful Act, sec. 176; 13 Cyc.

p. 364; 8 Am. & Eng. Ency. of Law, 935; 4 Sutherland on
Damages, 1265. In conclusion upon this matter, we hold that
the rule of evidence thus announced by the American authori-
ties is more in consonance with justice than that which obtains
in England, and that, therefore, the proffered evidence was
properly rejected.

Appellant complains of the court's refusal to give an in-
struction in the following language: "The pecuniary value of
the life of the deceased to the plaintiffs is the value in money
of the life of said decedent to the plaintiffs at the time of her
death." It is said that this instruction was approved as a
correct exposition of the law in *Hillebrand* v. *Standard Bis-
cuit Co.*, 139 Cal. 236, [73 Pac. 163]. In the Hillebrand case
the action was on behalf of the father and mother, sole heirs,
to recover for the death of their daughter. The court had
instructed the jury that its award must be limited to the
pecuniary damages and then had said that "the pecuniary
loss in such case means the value in money, if any, of the life
of the deceased to her father and mother." Appellant, ob-
jecting to this instruction, contended only that the phrase
"to her father and mother" would justify an allowance
greater than the actual pecuniary loss sustained. This court
declared merely that such a ground of objection was trivial
and untenable. But to hold that an instruction is not erro-
neous for the reason above indicated is an entirely different
matter from saying that a case should be reversed for a refusal
to give the instruction. And, indeed, such an instruction,
standing alone, might very properly be refused as tending to
confuse rather than to enlighten. It states a truth as obvious
as that two and two make four, and therefore there is no
necessity for giving it. The giving of it alone and unex-
plained therefore would tend to arouse inquiry in the jurors'
minds as to some deeper significance, some profounder truth,
which it might be thought to contain. In a very broad sense,
the plaintiffs do recover for the "value in money" to them of
the life which is taken away. But unless fully advised, the
jury might not understand that that value in money includes
elements upon which in truth no real value in money can be
placed, elements the value of which the law, for utter lack
of a better method of compensation, says shall be estimated
in terms of money. Who can accurately estimate, for exam-
ple, in terms of money, the value to a growing daughter of

the care of a wise and loving mother? With that companionship the daughter may grow into a worthy successor of the mother; without it she may fall into evil ways and her loss be incalculable in any terms of money. These are legitimate elements of consideration by the jury, but they are elements which are not obvious in the mere declaration standing alone of "the value in money of the life of the deceased." Wherefore we hold that since the jury was fully and fairly instructed upon all of these matters, the refusal to give this particular instruction was not error, and if the jury had not been fully instructed upon these matters the court would have been justified in refusing to give this instruction, which, though verbally accurate, might have occasioned misleading confusion in the jurors' minds.

The judgment and order appealed from are affirmed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Angellotti, C. J., concurred.

Rehearing denied.