[Civ. No. 10306. Third Dist. Feb. 15, 1963.]

APHRODITI STATHOS et al., Plaintiffs and Appellants, v. JOHN LEMICH, Defendant and Respondent.

Anthony J. Scalora and Leonard P. Burke for Plaintiffs and Appellants.

Fitzwilliam, Memering & McDonald and Robert H. Memering for Defendant and Respondent.

FRIEDMAN, J.—Plaintiffs are the widow and seven children of Frank Stathos, who died after being struck by an automobile driven by defendant. In this wrongful death action defendant admitted liability and the case went to trial before a jury on the issue of damages alone. The jury returned a verdict for $7,388.80 of which $1,838.80 constituted funeral expenses. Plaintiffs' motion for new trial was denied. Plaintiffs appeal from the judgment and from the order denying a new trial. An order denying a new trial is not appealable and that portion of plaintiffs' appeal is dismissed.

Uncertain evidence of decedent's age indicated that he was 67 or 69 years old at the time of death. If the former he had a life expectancy of 10 years; if the latter of 8.97 years. His widow, to whom he had been married for 35 years, was 54 years old at the time of his death and his seven children (one daughter and six sons) ranged from 23 to 35 years. At the time of their father's death, four of the children were married and had their own homes. The other three lived with their parents. Family relationships were close and devoted.

Mr. Stathos had been active in the bar and restaurant business in Sacramento for approximately 21 years. At the time of his death he owned the Arch Cafe and Frank's Club. Four of his sons were operating these two businesses, as well as the Club Four which he had given to three of his sons. Although during the past few years Mr. Stathos had not worked regularly in any of these establishments, he would show up daily to assist in business concerns and to advise his

sons on management matters. During 1958, the calendar year preceding his death, his business enterprises had gross receipts of approximately $146,000. His taxable income for the year was about $11,000 and he received in addition $2,700 cash representing depreciation allowances.

Before his death, Mr. Stathos had contributed considerable amounts to his widow and children over and above ordinary living expenses. Upon school graduation, each of the seven children received a car. After his daughter's graduation she and her mother received a trip to Europe. Two of his sons were given homes after they were married and he had purchased building lots for the three unmarried children. He gave three sons approximately $15,000 toward the purchase of Club Four. Another son had received approximately $21,000 for tuition and living expenses in college and dental school.

Without objection from defendant various members of the Stathos family testified to their expectations of future paternal gifts and assistance which were frustrated by his death. Decedent had promised to help one son who was negotiating a $\frac{1}{3}$ partnership interest in a $200,000 supermarket. Another son was a dental officer in the Army, expecting to return to civilian life and planning to establish a dental practice in Sacramento. His father, he testified, had told him that he would contribute $15,000 to that end. Urban redevelopment was resulting in condemnation of Frank's Club, one of the family enterprises. He told three of his sons to buy another bar, that he would pay for it and put the title in their names. Upon marrying, each of the unmarried children was to receive a wedding and a gift of a house.

Over objection the defense was permitted to introduce a copy of the inventory and appraisal of the Stathos estate. In his closing argument defense counsel expressed views indicating that the continued existence of the income-producing business enterprises negatived the idea of material or monetary loss, that the loss of her husband did not impair Mrs. Stathos' financial security. The jury assessed the general damages for the Stathos family at $5,500.

 Plaintiffs assign the trial court's admission of the inventory and appraisal as error. The general rule rejects such evidence in a wrongful death action. Assets inherited from the deceased person do not diminish the damages suffered by his heirs. (*McLaughlin* v. *United Railroads*, 169 Cal. 494 [147 P. 149, Ann. Cas. 1916D 337, L.R.A. 1915E 1205]; *Wilson* v. *City & County of San Francisco*, 106 Cal.App.2d 440

[235 P.2d 81].) ▇ Evidence of the heirs' wealth or poverty is inadmissible. (*Cervantes* v. *Maco Gas Co.*, 177 Cal. App.2d 246 [2 Cal.Rptr. 75]; *Johnson* v. *Western Air Express Corp.*, 45 Cal.App.2d 614 [114 P.2d 688].)

Defendant rejoins that the evidence was admissible as against the Stathos children if not as against the widow. ▇ The children were entitled to show the loss of reasonably expected gifts as an element of damage. (*Bond* v. *United Railroads*, 159 Cal. 270 [113 P. 366, Ann. Cas. 1912C 50, 48 L.R.A. N.S. 687]; *Sneed* v. *Marysville Gas etc. Co.*, 149 Cal. 704 [87 P. 376].) On that score the children had testified at length and to the tune of approximately $100,000 in anticipated gifts. ▇ Defendant argues that he was entitled to show: (a) that Mr. Stathos' assets were insufficient to bear such drainage; and (b) that the described expectations were not reasonable. He points out that to deprive him of such evidence would leave him defenseless against manufactured testimony of anticipated largess. Such apparently was the theory upon which the trial judge admitted evidence of the Stathos inheritance.

▇ In an action such as the present, general damages are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society, and protection. ▇ The doctrine is enunciated in *McLaughlin* v. *United Railroads*, 169 Cal. 494 [147 P. 149, Ann. Cas. 1916D 337, L.R.A. 1915E 1205], with emphasis on the special problem of admissibility of evidence of the extent of decedent's estate. The *McLaughlin* decision upheld the trial court's rejection of a defense offer to demonstrate what the plaintiff's heirs had received from the estate of their mother. "This rule of evidence," said the court, "has its foundation in the refusal of the court to allow the defendant to benefit by his own wrong, to lessen his responsibility in damages for the injury which he has inflicted, by a showing that, quite fortuitously, through no contribution of defendant's own, the plaintiffs have received a certain pecuniary benefit." (169 Cal. at p. 498.)

Thus in the *McLaughlin* case the defendant was attempting to reduce its own liability for its own wrong by trotting forth a pecuniary benefit for which it could claim no just credit. Subsequent cases have followed and restated the same rule. (*Wilson* v. *City & County of San Francisco*, 106 Cal. App.2d 440, 445 [235 P.2d 81]; *Cervantes* v. *Maco Gas Co.*,

177 Cal.App.2d 246, 252 [2 Cal.Rptr. 75] ; *Johnson* v. *Western Air Express Corp.*, 45 Cal.App.2d 614, 622 [114 P.2d 688].) The rule is simply a particularized expression of general principles which exclude evidence of no materiality and with a potential for prejudice. It prevents a wrongful death defendant from using evidence of the decedent's assets as an aggressive weapon. ■■■ Here, however, defendant was attempting to parry, not thrust. Plaintiffs had opened the combat by testifying on the score of their father's anticipated generosity. Defendant had no means of proving that decedent had not said what his heirs now testified he said. Helpless to parry this evidentiary onslaught by direct evidence, his counsel could only resort to circumstantial evidence. Logically, evidence of the decedent's worth and his lack of cash assets could supply an inference that the paternal gifts were phantasmal, not reasonably to be anticipated. In the alternative it had an impeaching effect on the heirs' testimony, to be accepted or rejected by the finder of fact. In the context of the tactical courtroom situation created by plaintiffs' testimony, evidence of the Stathos estate was material. It was particularly material because of the otherwise impregnable character of the self-serving descriptions of decedent's declarations. Under these circumstances, and notwithstanding the general exclusionary rule, evidence of the decedent's assets at the time of his death was admissible as against the Stathos offspring.

■■■ Mrs. Stathos, however, had not described any gift expectations of her own. Her loss was that of a widow deprived of ordinary support and of her husband's society. Evidence of the estate assets was not admissible against her. At this point defendant relies on the doctrine of multiple admissibility. The argument is sound. Under the special circumstances of this case, evidence of assets owned by decedent at his death was admissible against the plaintiff-children but not as against the plaintiff-widow. Since it was admissible for a limited purpose, the general objection raised by counsel for plaintiffs was inadequate. ■■■ He was entitled to a limiting instruction to the jury but did not request one. Hence the fact that the evidence went in without limitation is not available on appeal. (*Daggett* v. *Atchison, T. & S.F. Ry. Co.*, 48 Cal.2d 665, 666 [313 P.2d 557] ; Witkin, Cal. Evidence (1958) § 709, p. 741.)

The above discussion disposes of the evidentiary issue. Nevertheless, the problems raised by admission of the disputed

evidence insist on continued recognition in connection with plaintiffs' next contention. The contention is that the jury's award is inadequate as a matter of law, requiring us to reverse the judgment. Following the verdict plaintiffs moved for a new trial, one ground being insufficiency of the evidence to justify the verdict; in other words, that the amount of the verdict was so inadequate that the evidence did not justify it. The motion was denied. ▮ On a motion for new trial review of adequacy of damages is committed to the discretion of the trial court and its refusal of a new trial will not be disturbed unless an abuse of discretion has occurred. (*Carter* v. *Saxton,* 211 Cal.App.2d 836, 840-841 [27 Cal.Rptr. 671]; *Bencich* v. *Market St. Ry. Co.,* 20 Cal.App.2d 518, 520 [67 P.2d 398]; see *Clifford* v. *Ruocco,* 39 Cal.2d 327, 332 [246 P.2d 651], concurring opinion.)

▮ In this case the jury awarded the widow and seven adult children a lump sum of $5,500 in general damages. This sum supposedly represented the widow's loss of support for 9 or 10 years of life expectancy, plus a monetary equivalent for the loss of her husband's society, and finally some allowance for the loss of society on the part of the adult children. Mr. Stathos had always been a good provider and unlike many elderly persons his earnings were still considerable. If we discard all considerations of familial love and devotion which inhere in an award for loss of society, if we reject all possibility of future gifts to the children, if we look only to the cold cash worth of such support as Mrs. Stathos would have received during the remaining years of her husband's life, the jury award in this case measures that worth at between $500 and $600 per year. Liability had been conceded; there was no quarrel on anyone's part with application of the standard measure of recovery which allows a widow the present value of future support *without giving the tortfeasor any credit for her benefits from other sources.* With recognition of the verdict's added function of supplying some compensation for the family's loss of society comes realization of the fact that this verdict for a wrongful death is so pitifully inadequate as to shock the conscience.

What was in this jury's mind? In this case where liability had been conceded, the jury was bound to apply the damage criteria given to it by the court's instructions. Evidence of the Stathos family's comfortable circumstances bars any notion that these jurors were measuring the widow's loss of support in terms of crusts of bread and rags of clothing. Only one

conclusion is possible—the jury had penalized the injured parties and rewarded the wrongdoer, had charged plaintiffs and credited defendant with the sound, income-producing assets of the Stathos estate. What the law permitted for a limited purpose had become a pivotal element in determining the verdict.

Defendant points out that among the jury instructions was one which told the jurors not to consider any benefits plaintiffs received by way of inheritance from Frank Stathos. Yet, in his opening statement to the jury, defense counsel had said: ''We will show that at the time of the death, the business was still there and is there now, except for the one that was sold when redevelopment came in. We will show that the home they own, that the father owned, is still there, and the two other pieces of property are still there. We will show that all of the assets with which he was going to follow through with these promises are still there. We will show that, in fact, all of the assets are now in the hands of the surviving widow, and that, from a financial point of view—'' At that point counsel for plaintiffs objected; after a discussion outside the presence of the jury the objection was overruled.

In his closing argument counsel stated: ''Again I would submit to you for your very serious consideration this proposition that so far as the material aspects of this problem are concerned, the state of the estate, the affairs, the income, the property, so to speak, her [the widow's] position has not lessened or changed one whit.''

The opening statement of defense counsel, to which objection was made, and his closing argument, to which objection was not made, coupled with the paltry award, make it evident that the court's formal instruction was lost in the shuffle of the jury deliberations.

The judgment is reversed with a direction for a new trial on the issue of damages.

Pierce, P. J., and Schottky, J., concurred.