FAJARDO v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. June 12, 1903.)

1. DEATH—DAMAGES—EVIDENCE—PROSPECTIVE ADVANCEMENT IN SALARY.
　　On the issue as to the damage caused by the negligent killing of plaintiff's intestate, evidence was inadmissible as to a prospective advance in his salary, based on the prosperity of his employer's business; such prosperity being dependent upon a problematic condition of peace or war in the state of Colombia.

2. SAME—PROBABLE INCOME OF DECEDENT.
　　On the issue as to the damage caused by the negligent killing of plaintiff's intestate, it was improper to permit a witness to testify that at the time of the trial he would have been receiving about $32 per week, had he lived, and that he could reasonably have expected to receive within a short time $2,500 to $3,000 a year.

3. SAME—MEASURE OF DAMAGES.
　　Under Code Civ. Proc. § 1904, providing that the damages awarded in an action for wrongful death may be such sum as the jury deems just compensation for the pecuniary injuries resulting from the death to those for whose benefit the action is brought, a sum which at the current rate of interest for trust investments would bring an amount equal to the earning power of the decedent does not constitute a just measure of damages.

Appeal from Trial Term, New York County.

Action by Elizabeth B. Fajardo, as administratrix, against the New York Central & Hudson River Railroad Company, impleaded, etc. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Austen G. Fox, for appellant.
Edwin T. Rice, for respondent.

HATCH, J. Plaintiff's intestate was killed on January 8, 1902, in a railway collision which occurred in the tunnel of the defendant in the city of New York. On the trial it was admitted by the defendant that plaintiff's intestate came to his death through the negligence of the defendant, and the only question at issue and litigated upon the trial was the amount of the damages which the plaintiff was entitled to recover. Several questions are presented by this appeal which are not necessary to be discussed, as we have reached the conclusion that the judgment must be reversed for prejudicial error committed in the reception of evidence, and in the charge of the court respecting the rule to be applied in awarding damages.

Walter H. Capen was called as a witness, and testified that he was in business at 60 Pearl street, in the city of New York. It does not appear from the record what the business was which was carried on by the firm of which this witness was a member. It did, however, appear that the deceased occupied a confidential position with the firm, attended to correspondence and making out consular invoices and house invoices, and that he was able to speak and write French, Spanish, and a little Portuguese; that the principal business of the firm was conducted in Colombia. This witness testified to the satis-

factory manner in which the deceased discharged his duties to the firm, also to his correct habits, and that he was receiving a compensation of $23 per week from the firm at the time of his death. He was asked: "Q. What were his prospects as to future earnings?" To this question defendant's counsel objected, as being too remote, conjectural, and uncertain, and calling for a conclusion or opinion of the witness. The court overruled the objection, the defendant excepted, and the witness answered: "A. Why, we advance every year, according to the prosperity of the business." The examination of this witness was then continued as follows:

"Q. What reasonable rate of increase would this man have received, were he now living? At what rate per week would it be? (Same objection, ruling, and exception.) A. He would receive this year about an increase of $8 per week, so that his salary at this time would be about $31 a week, if he were now living. Q. What is your custom as to these increases of salary with your old employés? (Same objection, ruling, and exception.) A. Every year, as I say, we always made such increases, according to the prosperity of the business. We have always been more or less prosperous. We had our principal business in Colombia, which country has been in war about three years, and has just got over it, and we would now be in a better position to further his interests. Q. Then his weekly return at the time of his death was less by reason of the circumstances of the war in Colombia—is that it? Defendant's Counsel: Objected to as calling for the conclusion of the witness. The Court: This witness was at the head of the firm. He is the best man to say what prospects one of his employés had in that firm. Defendant's Counsel: I do not doubt at all his entire competency, but what was in my mind was the probable or improbable condition as to war or peace in some part of South America, which is a rather conjectural basis for his testimony. Plaintiff's Counsel: The question was addressed to his receiving less by reason of the pendency of the war at that time than he otherwise would have. (Objection overruled. Exception to defendant.) A. Yes, sir; peace has been declared there. Q. And since then peace has been declared, has it not? A. Yes, sir. Q. What would be his rate of weekly pay at this time if he were now living? Defendant's Counsel: Objected to upon the ground that they are entitled to receive damages based upon a consideration of what he was getting when he died. To allow this witness to state what, in his opinion, he would be receiving if he were now living, is conjectural and uncertain and irrelevant. The Court: It is only a circumstance in the case. It is not conclusive. It is a circumstance that the jury may look at in connection with other circumstances. They may attach very little importance to it, but it is competent. (Exception to defendant.) A. About $32."

This witness then testified as to the earnings of the deceased outside of his weekly salary, in addressing catalogues, business and private letters, working at home. He was then asked by plaintiff's counsel:

"Q. Returning for a moment to the question of yearly increases: Was Fajardo a man who would have been regularly promoted? (Same objection, ruling, and exception.) A. Yes, sir. Q. Might he not have reasonably expected to be paid as much as $2,500 or $3,000 a year, by reason of the character of the services rendered by him to you? Defendant's Counsel: Objected to as conjectural and uncertain, and as calling for the conclusion of the witness, and that it is irrelevant and too remote. The Court: The witness may answer, if he can answer with reasonable certainty. (Exception to defendant.) A. There would be a reasonable certainty in time; yes, sir. Q. Of his reaching $2,500 or $3,000 a year. A. Yes, sir; there would be."

The quoted testimony was clearly incompetent, for several reasons. The expectation of advancement in salary was based upon the pros-

perity of the business of witness' firm, and this was made the subject of great uncertainty, as it appeared that the prosperity of the business was dependent upon the conditions of peace or war in the state of Colombia, which, if current reports might be considered, is still over-shadowed in doubt. Possibilities of a prosperous business as a basis for predicating an award of damages upon which to found an increase in the payment of salary is too conjectural to be considered; but, in addition to this, the witness did not limit his testimony to the possibilities of peace in Colombia, and the prosperous business therefrom, but he was permitted to assume and testify as an absolute certainty that decedent at the time of the trial would have been receiving about $32 per week, and that he could reasonably expect to receive within a short time from $2,500 to $3,000 a year. In this matter the witness was allowed to usurp the province of the jury, by stating the income the decedent would have been receiving, had he lived. Manifestly, this was improper. The witness could only be permitted to state the nature of the business, the character of the services which the decedent rendered, the amount which was paid for such services, the conditions of the business, and the usual rate paid employés, considering the length of his employment, his skill and faithfulness; and from these facts it was for the jury to conclude what would be, within reasonable prospect, the earning power of the decedent. The examination proceeded far beyond a legitimate inquiry, and resulted in the witness being permitted to substitute himself for the jury, which is not permissible.

Henry Parish was called as a witness for the plaintiff, and testified that he was the second vice president of the New York Life Insurance & Trust Company; that such company had a large number of trusts; that he was familiar with the business and returns on the investment of trust funds. He was then asked and permitted to answer, over the objection and exception of the defendant, that the rate of interest earned by trust funds at the present time was about 3 per centum. Upon this subject the court, upon request of plaintiff's counsel, charged "that, in estimating the amount of damage to be awarded, the jury should take into consideration that the infant children would be entitled to two-thirds proportion of such recovery, the amounts to be paid to the respective guardians of the children, and that the amount of interest which can reasonably be expected to be obtained by guardians from trust investments, under the laws of New York at the present time, does not exceed three per cent. or three and one-half per cent. per annum." The defendant's counsel asked the court to charge upon this subject "that the amount of the income of the deceased, to be considered by the jury, is the amount which he was receiving at or about the time of his death." The court charged that this was a circumstance which might be considered by the jury. The defendant's counsel asked the court to charge that "it must be limited to that." The court declined so to charge, and the defendant excepted. The defendant's counsel further asked the court to charge "that the jury must not award such a sum, if invested with reasonable safety, as would produce an annual income to what they may find as a fact to have been the net earnings of the deceased

at or about the time of his death." The court declined so to charge, saying, "The jury will all the time have to consider the circumstances that he might have died from some other cause at any time." The defendant's counsel further asked the court to charge, "In determining what is the pecuniary loss caused by the death of plaintiff's intestate, the jury are not to base their allowance upon a consideration of what is to be done with the money." The court declined so to charge, and the defendant excepted.

By the express provisions of section 1904 of the Code of Civil Procedure, the damages awarded "to the plaintiff may be such a sum as the jury * * * upon a trial * * * deems to be a fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whose benefit the action is brought." This provision of the Code and section 1903 were the subject of examination in Hinsdale v. N. Y., N. H. & H. R. Co., 81 App. Div. 617, 81 N. Y. Supp. 356; and it was there held that evidence of the amount which it would cost to purchase an annuity equal to the amount of the decedent's income, based upon the probable duration of his life, had he survived, was incompetent, and that the jury would not be justified in using such sum as a basis upon which to found their verdict. The infringement of the rule in that case was not so grievous an error as the infringement of the rule in the present case. Some courts have supported such a measure of damages. Baltimore & Ohio R. Co. v. Henthorne, 73 Fed. 634, 19 C. C. A. 623. But herein the proof was received, and the jury authorized to find the earning power of the sum to be awarded, and thereby to determine what sum would be necessary, at the rate of 3 or 3½ per cent., to produce an income equal thereto, or the proportion to which the children were entitled, which the deceased was earning and gave to them during his lifetime. This was nothing more or less than a capitalization of the earning power of decedent, and thereby making it the basis of an award of a sum of money which, at that rate of interest, would produce the equivalent thereof. This rule of damage has been condemned. Morrison v. L. I. R. Co., 3 App. Div. 205, 38 N. Y. Supp. 393; Gregory v. N. Y., L. E. & W. R. Co., 55 Hun, 303, 8 N. Y. Supp. 525. The evidence was clearly incompetent, and the charge erroneous, as such rule would give not only the amount of the pecuniary loss which the plaintiff and the children had sustained, but would, in addition thereto, give them the principal sum which produced that amount of income. The measure of damages is the pecuniary loss sustained, and the award is to be made upon that basis. Beyond this the law does not authorize a recovery. Geary v. Met. St. Ry. Co., 73 App. Div. 441, 77 N. Y. Supp. 54.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.