(91 App. Div. 457.)

NELSON v. YOUNG et al.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. EVIDENCE—OBJECTIONS—QUESTIONS RAISED.

A general objection to an answer stating that deceased's wages "would be  *  *  *," was aimed at the conjectural character of the answer, and did not raise an objection to the finished answer as to the union scale of wages, on the ground that there was no proof that deceased was a union

man, where the question was as to the wages of the class of men to which deceased belonged, and did not call for any reference to union wages.

2. SAME—WAGES—UNION SCALE.

A witness may give the union scale of wages as a ground for his conclusion as to the probable wages of a person injured, although there is no proof that such person was a union man.

3. SAME—OBJECTIONS—GROUNDS—ABSENCE OF PROOF.

In an action against a building contractor for injuries to a servant of a subcontractor caused by the fall of a building, testimony of a statement made to defendant that the building was unsafe was not objectionable on the ground that defendant was not doing any of the work, or that all the work was sublet, in the absence of any evidence as to such fact.

4. SERVANT'S INJURIES—NOTICE OF DEFECTS—EVIDENCE.

Where an employé of a subcontractor was injured by the fall of a building, evidence that some weeks before the accident the superintendent of the building notified defendant, the building contractor, that the building was unsafe, was competent on the issue of notice to defendant.

5. SAME—CONDITION OF PREMISES—EVIDENCE—REMOTENESS.

Where a building fell, pending construction, whereby an employé was injured, evidence as to the condition of the building some six weeks before the accident is not too remote to show its condition at the time of the accident.

6. SAME—APPEAL—REVERSIBLE ERROR—ADMISSION OF EVIDENCE.

The admission of evidence as to the condition of a building some six weeks before injuries received by its fall is not so erroneous as to require a reversal.

7. SAME—EVIDENCE—QUESTIONS IMPROPERLY ANSWERED—REMEDY.

A question as to what witness did in the building the Monday following the accident was not objectionable as calling for the condition of the building on that day, and if the answer described the condition the remedy was to strike it out.

8. WITNESS—EXPERT TESTIMONY—CROSS-EXAMINATION.

Where, after the fall of a building in process of reconstruction, an official who examined the same testified for plaintiff as to its condition, a question on cross-examination as to "what was your conclusion" was properly excluded as not a proper subject for expert testimony.

9. SAME—EXPERT TESTIMONY—LENGTH OF SPAN.

It is competent for a witness to testify as to whether 27 feet is an unusually long span, as such fact is not a matter of common knowledge.

10. SERVANT'S INJURIES—EVIDENCE—CROSS-EXAMINATION.

In an action for servant's injuries, a question on cross-examination as to whether the general contractor (defendant) was responsible to witness as representative of the owner for carrying out the contract was not objectionable where witness had testified on the direct that it was his duty to see that the plans were being carried out, and if they were not carried out to notify the general contractor.

11. SAME—INSTRUCTIONS—HARMLESS ERROR.

A charge that if it was the duty of defendant to furnish shoring in a building, and if it was negligence to omit to furnish shoring, defendant would be liable, in the absence of contributory negligence or assumption of risk, was harmless, where at defendant's instance the court subsequently charged that to find defendant responsible the jury must find some act of personal negligence on his part which caused the accident, independent of all other causes.

12. SAME—DUTIES OF CONTRACTOR—SHORING FOR BUILDINGS.

The duty of shoring a building rests on the contractor as against subcontractors, in the absence of proof to the contrary.

---

¶ 5. See Master and Servant, vol. 34, Cent. Dig. § 916.

13. SAME—CONTRACT BETWEEN OWNER AND CONTRACTOR—EFFECT ON STRANGERS—INSTRUCTIONS.

A charge that the contract between the owner of a building and the contractor devolved on the latter the reconstruction of the building with safety to the workmen and the public is subject to criticism as to the effect of the contract upon strangers.

14. SAME—LIABILITY OF CONTRACTORS—PERSONAL NEGLIGENCE.

In order to find a contractor responsible to a person working for a subcontractor on the reconstruction of a building, there must be some act of personal negligence on the part of the contractor which caused the accident, independent of all other causes.

Appeal from Trial Term, Kings County.

Action by Matilda Nelson, as administratrix, etc., against William Young, impleaded with others. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Edwin A. Jones (Harford T. Marshall, on the brief), for appellant.

Frank Harvey Field (J. Edward Swanstrom and Conrad Saxe Keyes, on the brief), for respondent.

JENKS, J. The plaintiff's intestate was a servant of a subcontractor of the defendant Mr. Young, impleaded. Mr. Young was a contractor for the reconstruction of a building. During the work the interior of the building collapsed, and the intestate, working therein, was thereby killed. The testimony tending to show that this collapse was due to lack of shoring, and the responsibility of Mr. Young therefor justified the submission of the case to the jury, and I see no warrant for disturbing its conclusion upon the facts.

The learned counsel for the appellant assigns many errors, both in the rulings and in the charge. The brother of the intestate having testified that the intestate was as good a structural iron worker and iron finisher as "can be made, * * * that is, the general run of men," was asked: "Q. Now, can you tell us what wages that class of men are getting now? A. My brother's wages would be —." General objection was thereupon interposed and overruled, with an exception. The witness answered: "A. Four dollars and a half a day, at the least. Well, four dollars is the run of the wages—is the union scale of wages. Well, a man that does a little extra work like that, taking care of a gang, at times has the privilege of getting a little more. My brother did occasionally take care of a gang—sometimes." It is argued that there is no proof that the plaintiff's intestate was a union man, and no supposition that he would become one, and, further, that such evidence was incompetent, in the face of the proof that the wages paid to the intestate were $3.25 a day. But the form of the objection did not raise the question now presented. It was a general objection to the unfinished sentence: "My brother's wages would be —," evidently aimed at the opinionative or conjectural character of the answer. The question simply assumes that the brother would have continued to be of the same class of workmen, would have had employment, and would have received pay for his services equal to that of his fellows. I think it falls within the rule of Fajardo v. N. Y. Central & H. R. R. R. Co., 84 App. Div. 354, 358, 82 N. Y. Supp. 912, and not within the limitations thereof. The question did not call for any reference to

union wages. No objection was made to that reference; no motion was made to strike it out. The witness did not testify that the intestate would have received $4.50 because he would have been a union man. His answer is positive: "Four dollars and a half a day, at the least." He states a fact—not even that union wages are $4.50, but that $4 is the run—the average—the union scale. This is far from saying that the intestate would have received $4.50 a day because he would have become a union man. Undoubtedly the rates of wages are more or less regulated by trades unions, whether paid to union men or to nonunion men. And it cannot be said that it was error to permit the witness to give a ground for his conclusion or to form a conclusion as to the rate then payable to nonunion men upon the basis of the prevailing rate among the union men. The authorities cited by the appellant refer to the compensation, salary, wages, or stipend which would have been paid, provided the intestate was promoted or was advanced to a higher class of employés, or went into some other business or calling. That is but a possibility, and such proof is but problematical; but in this case the question merely relates to the wages payable to a man about 35 years old, assuming that he would have continued in the same status. The only problematical elements are continuance of life and an opportunity to labor on.

A witness testified that about six weeks before the accident he heard Decker, the superintendent for one of the subcontractors, tell Young, the defendant, in answer to an order by Young as to the hoisting of certain beams, that the building was already unsafe. Objection was made and exception was taken after the testimony was given, and when the court asked for the ground of the objection the counsel replied that they contended that Mr. Young was not doing any of the work, and all of the work was sublet. As there was not, then, a particle of proof of this, the objection was not, then, well taken to this testimony, which was competent on the subject of notice to Mr. Young.

A witness testified that he went into the building about six weeks before the accident. He was then stopped by the objection that the condition of the building at that time was too remote as throwing any light upon the condition at the time of the accident. The objection was overruled, under exception. Bearing in mind the form of the objection, I think that it was not reversible error to receive the evidence. Of course, the negligence must be determined by the condition of the building at the time of the accident. There are authorities which forbid evidence of the condition of the locus in quo prior to the accident. But it must be remembered that here was a continuous work of radical reconstruction which required the removal and change of almost the entire interior of the building. The work was one of degrees, and had progressed from day to day up to the removal of partitions and the cutting of chases. To show the condition of the continuous work at any given time, even six weeks before, was not "too remote to throw any light on the condition of the building at the time of the accident." The objection was, as it were, to a description of a stage in progressive work, which enlightened the jury as to its character and progress. Moreover, the history of the work from that time up to the time of the accident was put before the jury, as well as the condition of the building

at the time of the fall. I think it cannot be said, in any event, that the ruling was so erroneous as to require a reversal. See Keatley v. I. C. Railway, 94 Iowa, 688, 689, 63 N. W. 560.

There is no objection in the record to the proof of a prior accident.

It is also argued that it is improper to admit evidence as to the condition of the building on Monday following the Saturday when the accident occurred. But this question is only presented by a ruling upon the question: "Q. And on Monday, what did you (the witness) and Bowman do in the building?" The objection taken was: "We object to what was done on Monday after the accident, because the conditions were materially changed." The question did not call for the condition of the building. If the answer described it, the remedy was to strike it out. Mr. Cole, an official who examined the building after the accident, was called by the plaintiff. On cross-examination, he was asked: "What was your conclusion?" "Objected to as incompetent, irrelevant, and immaterial. If he wishes to put him on as his expert here, it is not competent now." The objection was sustained under exception. I think that the ruling may be upheld under Van Wycklen v. City of Brooklyn, 118 N. Y. 424, 24 N. E. 179, and Dougherty v. Milliken, 163 N. Y. 527, 57 N. E. 757, 79 Am. St. Rep. 608. See, too, Pursley v. Edge Moor Bridge Works, 56 App. Div. 71, 67 N. Y. Supp. 719, and cases cited; affirmed 168 N. Y. 589, 60 N. E. 1119.

As to the specific question as to the chases, or recesses, the answer was not stricken out. It was competent for the witness, Mr. Hull, to testify whether 27 feet was an unusually long span. This is not a matter of common knowledge. If it was, it was not reversible error. Miller v. Erie R. R. Co., 34 App. Div. 217, 54 N. Y. Supp. 606.

The propriety of the cross-examination of Mr. Young as to the shoring of the building is not presented save by an objection to the question whether it is not a constant practice in New York to continue doing business in buildings which are being reconstructed, and whether it was not possible in all cases to keep floors by shoring them, so that they will not fall down. The first question was not of material importance, and the second the witness did not answer. The question put to the architect, Mr. Cornell, on cross-examination: "Q. And the general contractor was responsible to you as the representative of the owner for the carrying out and fulfillment of all the terms of the contract and specifications?" was not objectionable in view of the fact that the witness had testified on the direct: "I would when I went there look the building over to see that the plans and specifications were being carried out. And if they were not carried out, I would notify the general contractor. The general contractor was Mr. Young." The subsequent questions as to the meaning of the shoring clause is not harmful, for the reason that the answer is plainly the correct interpretation of the clause in question.

The request charged under exception as follows: "If the jury find that the absence of the shoring in the building contributed to produce its collapse, and that it was the duty of the defendant Young to furnish whatever shoring was to be done in the building, and if they further find that it was negligent for the person whose duty it was to furnish shoring to omit to do so, they may hold the defendant Young liable

in the absence of contributory negligence or assumption of risk on the part of the intestate"—is perhaps subject to verbal criticism, but it is innocuous in view of the fact that, at the instance of the learned counsel for the appellant, the court subsequently charged "that to find defendant Young responsible the jury must find some act of personal negligence on his part which caused the accident, independent of all other causes." The request: "In the absence of stipulations or contracts devolving the work of shoring the building upon a subcontractor, the duty of shoring rested upon the principal contractor"—was not erroneous. The charge is not that the contractor was bound to shore the building as matter of law, but that the duty of shoring rested upon the contractor as against subcontractors, in the absence of any proof to the contrary. It certainly did not rest upon the owner. Burke v. Ireland, 166 N. Y. 305, 312, 59 N. E. 914. It certainly did not presumably rest upon any subcontractor. The charge as to the hazards, originally made, is an adoption of the headnote of Davidson v. Cornell, 132 N. Y. 228, 30 N. E. 573. If it be open to the rather subtle criticism made, the court charged the law in the following request. The request to charge: "The contract between the owner and the defendant Young devolved upon Young the duty of accomplishing the result intended, to wit, the reconstruction of the building with safety to the workmen and the public"—is open to criticism as to the effect of the contract upon strangers thereto. Cochran v. Sess, 168 N. Y. 372, 61 N. E. 639. But the court, at the appellant's request, thereafter charged: "Any provision in the contract between the defendant Young and the owners of the building as to the eventual liability for damages does not inure to any benefits to the plaintiff in this action." The other requests do not require particular comment. The learned counsel for the appellant sums up his objections as follows:

"Taking as a whole the instructions given over exception and those refused, it certainly seems apparent that the jury were saturated with the idea (1) that Young was an absolute insurer for the safety of the plaintiff's intestate; (2) that he was responsible to the plaintiff under, pursuant to, and because of his contract with the owner, to which the decedent was not a party; (3) that it was his duty to do the shoring at the place where the beams fell, and to see that such shoring was always in place; (4) that he interfered with the details of the work by giving orders in respect thereof, despite the whole of the evidence showing that he only gave orders to see that the work conformed to the plans and specifications; (5) that negligence of deceased is no defense, even though the proximate and concurring cause; (6) that assumption of risk entered into the relation existing between Young and the deceased; and, (7) most of all, he was liable for the negligence of the person whose duty it was to do the shoring, whomsoever it may have been."

(1) The court did not finally charge that Young was an absolute insurer because it charged that, "to find defendant Young responsible, the jury must find some act of personal negligence on his part which caused the accident, independent of all other causes." (2) The court finally charged: "Any provision in the contract between defendant Young and the owners of the building as to the eventual liability for damages does not inure to any benefits to the plaintiff in this action." As to (3), see the authorities cited, supra. As to (4), I think the charge was fairly within the evidence, especially in view of Mr. Young's admission before the coroner's jury. As to (5), the court charged quite

the contrary; namely, if it was the proximate and concurring cause it precluded recovery. As to (6), the court did not charge that the assumption of risk entered into the relation, though it did charge as to that doctrine. And as to (7), the court finally charged correctly: "To find defendant Young responsible, the jury must find some act of personal negligence on his part which caused the accident, independent of all other causes."

The judgment and order should be affirmed, with costs. All concur.