# SUPREME COURT — APPELLATE DIVISION — . FIRST DEPARTMENT.

## July 11, 1918.

## THE PEOPLE v. JACOB POLSTEIN.

### (184 App. Div. 260.)

(1.) MANSLAUGHTER, SECOND DEGREE—DEATH CAUSED BY FAULTY CON-
STRUCTION OF BUILDING—EVIDENCE JUSTIFYING CONVICTION.

Appeal from a judgment convicting the defendant of the crime of man-
slaughter in the second degree in that being a contractor constructing
a building, he violated many provisions of the Building Code, failed to
provide proper cement and mortar, and in other ways was guilty of
improper construction, so that the building collapsed killing and injuring
several workmen. Evidence examined, and *held*, sufficient to sustain the
conviction.

(2.) SAME—EXPERT OPINION.

In such action it was proper for the court to exclude the opinions of
experts to the effect that the fall of the building was caused by defects
in the plan rather than in faulty construction by the defendant, for the
jury were competent to draw the inference themselves from the evidence
presented.

(3.) SAME—EVIDENCE OF CONSTRUCTION OF OTHER BUILDING.

It was proper for the court to allow proof of the method of construct-
ing an adjoining building where both buildings were erected under a
single contract and were progressing simultaneously.

(4.) SAME—CONCLUSIONS OF DEFENDANT, IDADMISSABLE.

It was proper for the court to exclude the defendant's conclusions as to
whether he neglected to construct the building according to the plans,
or whether he exercised every care to render it safe and secure.

(5.) SAME.

So, too, it was proper to exclude supplemental plans and testimony as
to what occurred after the collapse of the building.

(6.) SAME—CHARGE.

It is not reversible error to refuse requests to charge which have already been sufficiently and properly covered by the prior charge.

APPEAL by the defendant, Jacob Polstein, from a judgment of the County Court of Bronx county, entered in the office of the clerk of said county on the 1st day of June, 1917, convicting him of the crime of manslaughter in the second degree, and also from the orders forming part of the judgment roll, and from an order denying defendant's motion to set aside the verdict and for a new trial, and also from an order denying his motion in arrest of judgment.

*Abraham Levy* of counsel (*Leo H. Klugherz* with him on the brief), for the appellant.

*Francis Martin* of counsel (*Charles B. McLaughlin* and *Seymour Mork* with him on the brief), for the respondent.

PAGE, J.:

On August 23, 1916, a building collapsed on the east side of Marion avenue between One Hundred and Eighty-seventh and One Hundred and Eighty-eighth streets killing two men and injuring about twelve other workmen employed on that building. The building at the time of the collapse had been in the course of construction for a period of about six weeks. There were in effect two buildings being erected. The northerly one had been carried to the roof tier of beams; the southerly one had been built to the fifth floor. The owner for whom the building was being constructed was the corporation known as the S. M. C. Realty Company, the active members of which were Max Beck and Samuel M. Chase. The S. M. C. Realty Company entered into a contract with the corporation known as Loewy & Polstein for the construction of the brick work on the two buildings as shown on the approved plans to set

and supply all the materials therein specified, and further provided contractors to do all the work as required by the building and tenement house departments, walls to be made of eighty-five per cent cement and fifteen per cent lime. Two of the active members of the corporation who agreed to do this work were Jacob Polstein, the defendant, and Alexander Loewy. Chase, Beck, Loewy and Polstein and William Heath, the superintendent, were jointly indicted. Polstein elected to be separately tried. The evidence showed that a wall in the vestibule of the building gave way and caused a portion of the southerly building to collapse. The evidence that there were numerous violations of the Building Code in the construction of this portion of the building was produced. It was shown that there was no cement in the mortar and that the proportion of lime was about fifteen and one-half parts of sand to one part of lime. The Building Code (§ 27) provides that cement and lime mortar shall be made of one part of lime, one part of cement and not more than three parts of sand to each by volume. The result was that when this building collapsed the brick came away clean from the mortar, which shows that it had no binding effect and was little more than wet sand. It was also shown that the beams were not properly anchored to the wall. Futhermore, that at the point of the collapse the plans and specifications called for an I beam which was to rest upon a cast iron template twenty-four by sixteen, but instead, a blue-stone template ten by fourteen by four and one-half inches had been substituted with two I beams resting upon it. This bluestone that was shown was not of equal dimension but sloped so that one end was thinner than the other. The office of the template is to distribute the load. It is evident that a template fifteen by ten would not distribute the load as a template twenty-four by sixteen and would, therefore, have the effect of subjecting the wall to a greater strain. Furthermore, being used to distribute the load it should have been of equal dimension and

rested equally upon all portions of the wall, otherwise the bevel would occasion an additional strain. These I beams should have been bolted together and anchored by being bolted to a steel anchor that would have been carried into the wall itself, whereas they were merely loosely placed upon the template. In addition it was shown that in violation of the law, inside the walls there had been placed wooden beams instead of brick. In fact, the evidence was overwhelming that the building was constructed without regard to the requirements of law or the safety of the building and the evidence thoroughly supports the verdict. It is claimed, however, on the part of the defendant's counsel that certain questions that he asked of experts on cross-examination of plaintiff's witnesses and on direct examination of his own were excluded and that had these experts been allowed to testify, he would have proved in their opinion that what caused the building to fall were defects in the plan and not in the construction. An examination of the testimony does not bear out the contention of the defendant in this behalf. Experts were allowed to testify as to the facts and to state the load that the wall properly constructed would have safely sustained at this point and the load that rested upon the wall at the time of the collapse.

All of the facts that were necessary to allow an inference to be drawn as to what caused the collapse were placed before the jury. The question that the defendant sought to have answered was what in the opinion of the expert caused the collapse.

With all the evidence before the jury they were entirely competent to draw this inference for themselves, and the mere expression of the opinion of the experts would not have aided them.

In my opinion this case comes within the first rule as to expert testimony laid down by Judge WERNER in Dougherty v. Milliken (163 N. Y. 527, 533) where the conclusion that

could be drawn by the jury depends upon the existence of facts which are not of common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject, in which case experts give the facts to the jury while the jury must draw the conclusion. This rule was applied in Nelson v. Young (91 App. Div. 457, 461) in which a building in the course of of reconstruction collapsed, whereby plaintiff's intestate was killed. An official who had inspected the building after testifying to the facts as he found them was asked, "What was your conclusion?" The objection was sustained and the appellate court upheld the ruling. The ruling in Fox v. Buffalo Park (21 App. Div. 321, 331, affd., 162 N.Y. 559), relied upon by appellant, is not contrary to the ruling of the court in the instant case as will clearly appear when the questions allowed in that case are read. "A builder who had testified to the weakness of the joists as affected by the notching thereof, was asked whether such notching  *  *  *  rendered the joists unsafe; in other words, whether they were strong enough to bear the strain that would be put upon them. A question was addressed to another witness as to whether the floor of the structure, as it was constructed, was of sufficient strength to withstand a crowd using it for the purpose for which it was intended." The court said: "This evidence was received upon the theory that the jury, not being builders and acquainted with the conditions necessary to secure strength and security to a structure of this character, could be enlightened by the judgment and experience of men who were familiar with such structures, and with how strength and proportion should be adjudged in the things that combine to make up the structure in order to secure safety."

The fact that both buildings were constructed on the same plan was shown. The north building had progressed so that the roof tier of beams had been placed, thereby the corresponding wall in the north building to that which collapsed in the

south building was sustaining a much greater weight than that which rested upon the wall in the south building. This fact would tend to show more conclusively than expert testimony could, that the defect that caused the collapse of the south wall was in the construction and not in the plan.

Objection was made by the attorney for the defendant that evidence was allowed to be given as to the method of construction in the north building, but as this was all one building enterprise carried on under a single contract and progressing simultaneously, such evidence, in my opinion, was properly received.

It is urged on the part of the defendant that he was not allowed to negative by answers to direct questions the allegations of the indictment, but these questions consisted in asking the witness to state his conclusion; for instance: " Did you willfully and culpably neglect and omit to cause the walls to be properly bonded, and solidly put together, and to be built in a straight line, and to be carried up overhead and straight, with closed joints, and to close all joints in the walls, to be well filled with mortar of good quality, and to cause mortar of good quality to be used in the construction of the walls, in order that the same should be properly and solidly put together ? "

Objection to this question was sustained; and again: " Q. Did you neglect, according to your knowledge, to cause and procure the buildings to be built and erected in accordance with the plans and applications filed with regard to the building, in the Bureau of Buildings of the Borough of Bronx ? " " Q. Did you neglect to use and exercise every care and precaution in your power to render the building, and every part thereof, safe and secure, as well as during its construction, and upon the completion of the same ? "

All of these questions were entirely improper and the objections were properly sustained.

It was not error to exclude the supplemental plans and

testimony as to what occurred after the collapse respecting what was to be done on the building pursuant thereto.

The charge to the jury was very elaborate and very fair. The defendant's attorney took no exception thereto, but urges upon appeal the refusal to charge three requests. The substance of these requests couched in simpler language had already been given to the jury in the charge. It was unnecessary to charge the same proposition in the language of the requests which were for the purpose of defining proximate cause and culpable negligence. In fact all of the requests had been sufficiently and properly covered by the original charge, and although the proposition of law may be stated by counsel in a different form, the judge is not required to charge every request that may be properly expressed if he has already charged the same in substance.

The defendant was clearly guilty of the crime and was properly convicted.

The judgment should be affirmed.

CLARKE, P. J., DOWLING, SMITH and MERRELL, JJ., concurred.

Judgment and order affirmed.