**T. Roland BERNER and Arthur S. Lesser, Executors of the Estate of William Kapell, deceased, Plaintiffs,**

**v.**

**BRITISH COMMONWEALTH PACIFIC AIRLINES, LTD., a Foreign Corp., and British Commonwealth Pacific Airlines, Ltd., now doing business as Qantas Empire Aviation, Ltd., a Foreign Corp., Defendants.**

United States District Court
S. D. New York.
April 23, 1964.

T. Roland Berner, Gair & Gair, New York City, Harry A. Gair and Robert. Conason, New York City, of counsel, for plaintiffs.

Condon & Forsyth, New York City, George N. Tompkins, Jr., Austin P. Magner, New York City, of counsel, for defendants.

McLEAN, District Judge.

This is an action by the executors of William Kapell to recover damages for his death, which occurred on October 29, 1953 in California as a result of the crash of an airplane operated by defendant British Commonwealth Pacific Airlines, Ltd., in which Kapell was a passenger.[1] On June 28, 1963 Judge Ritter directed a verdict for plaintiffs on the issue of liability (219 F.Supp. 289 (S.D.N.Y. 1963)). The issue of the amount of plaintiffs' damage was thereafter tried before me and resulted in a jury verdict in favor of plaintiffs in the sum of $924,396. A minor part of this sum, i. e., $4,257, represented the stipulated value of Kapell's personal belongings as to which there is no dispute.

Defendants now move, pursuant to Rule 50(b), for judgment *non obstante veredicto* on the ground which they urged at the trial in support of their motion for a directed verdict, upon which the court then reserved decision. Defendants also move pursuant to Rule 59 for a new trial on the ground that the court erred in various respects and that the verdict was excessive. Plaintiffs move to add pre-judgment interest to the verdict.

The court's charge summarizes the evidence and sets forth the court's views on the applicable rule of damages. No purpose would be served by repeating in this memorandum all that was said there. Suffice to say that plaintiffs' evidence, uncontradicted by defendants, for defendants offered no evidence, showed convincingly that Kapell was a concert pianist of extraordinary talent, that he died at the age of 31 with a long life and work expectancy ahead of him, and that the earning power of an artist of his stature would undoubtedly have increased substantially over what it was at the time of his death. He left a wife and two minor children surviving him. The amount of the damage which they sustained by reason of his death was the question which the jury was called upon to decide.

◼ The basis of defendants' motion for a directed verdict and their present motion for judgment *non obstante veredicto* is the claim that, regardless of what Kapell's earnings were or would have been, there was no evidence from which a jury could properly find how much of his net earnings Kapell would have devoted, had he lived, to the support of his wife and family. After reviewing the evidence, I have concluded that this contention cannot be sustained and that the evidence on this point was sufficient to make out a prima facie case and sufficient, in the absence of any contrary evidence, to support a verdict in plaintiffs' favor. Kapell's widow testified that he normally spent about ten per cent of his net income on himself. In view of the evidence as to Kapell's devotion to his profession and to his family, and in view of the fact that there was no evidence to indicate that he had spent any substantial portion of his income in any other manner, or that it was likely that he would do so in the future, there was a sufficient basis for the jury to find that 90 per cent, or at any rate a percentage close to that, had been and, in all reasonable probability, would have been devoted to his family's support and welfare. See: Rogow v. United States, 173 F. Supp. 547 (S.D.N.Y.1959); Harrison v. Sutter St. Ry. Co., 116 Cal. 156, 47 P. 1019 (1897); Shebley v. Peters, 53 Cal. App. 288, 200 P. 364 (1921); Restatement, Torts § 925 Comment *b* (1939). Consequently, defendants' motions for a directed verdict and for judgment *non obstante veredicto* are denied.

◼ Defendants advance four grounds in support of their motion for a

---

1. Defendant Qantas Empire Aviation, Ltd., is the successor in interest of defendant British Commonwealth Pacific Airlines, Ltd. For present purposes the two defendants may be treated as one.

new trial. They claim first that the court erred in permitting the witness Kayes to testify as to his opinion "of the probable longevity" of Kapell. The single question and answer to which this objection relates was understood by me and I feel confident by the jury also, to refer not to Kapell's life expectancy (as to which other competent proof was received), but rather to his work expectancy, i. e., the period in which a highly gifted concert pianist could be reasonably expected to continue to perform and to receive public acceptance. The question and answer were as follows:

"Q In other words, in your opinion, with a reasonable degree of certainty, what was his longevity so far as a recording career was concerned at the time of death?

"A I can answer it this way. Arthur Rubinstein is 75 years old and is as active on the concert platform as he ever was. I would therefore project as an estimate of top activity, both from a concert standpoint as well as recordings, from Mr. Kapell easily the age of 65 or 70."

The witness was qualified by his experience as manager of artists for the RCA-Victor Division of Radio Corporation of America to express an opinion on that subject. This ground of defendants' motion is therefore without merit.

■ Defendants' second contention is that the court erred in permitting the witness Stern to testify as to changes in the scale of fees paid to concert artists which occurred subsequent to 1953. Defendants' position is that Kapell's earning capacity must be viewed as of the date of his death, and that hence the court and jury must ignore the rates of compensation for such services which prevailed thereafter.

Clearly this is not the law of New York. Faulk v. Aware, Inc., 35 Misc.2d 302, 231 N.Y.S.2d 270 (Sup.Ct.N.Y.Co. 1962), modified on appeal, 19 A.D.2d 464, 244 N.Y.S.2d 259 (1st Dept. 1963); Nelson v. Young, 91 App.Div. 457, 87 N.Y.S. 69 (2d Dept. 1904), aff'd, 180 N.Y. 523, 72 N.E. 1146 (1904). See Briscoe v. United States, 65 F.2d 404 (2d Cir. 1933).

Nor is it in accord with the general rule of damages as stated by the text writers.

"Since the effort is to predict future earning power, the latest data should be used, and therefore it is proper to show that changes have occurred in the prevailing rate of wages in plaintiff's occupation since the injury." McCormick, Damages 300 (1935). See Restatement, Torts § 924 Comment d (1939)

■ Assuming, without for the moment deciding, that the law of California, the situs of the tort, governs the measure of damages here, defendants' position is no stronger. Section 377 of the California Code of Civil Procedure provides that in a wrongful death action there shall be awarded such damages as "may be just." This general language has been interpreted by the California courts to mean that the pecuniary loss to the decedent's family is to be "determined by conditions existing at the time of the death of the deceased, taking into consideration in measuring it these prospective benefits which the members of the family were deprived of by his death." Simoneau v. Pacific Electric Ry. Co., 166 Cal. 264, 136 P. 544 (1913).

Another way of putting it, which comes to substantially the same thing, is:

"In an action such as the present general damages are measured by the financial benefits the heirs were receiving at the time of death, those reasonably to be expected in the future, and the monetary equivalent of loss of comfort, society, and protection."[2] Stathos v. Lemich, 213

2. Plaintiffs expressly waived any claim in the present case for damages measured by loss of comfort, society and protection.

Cal.App.2d 52, 28 Cal.Rptr. 462 (1963)

It would seem to follow that in measuring the "prospective benefits" which decedent's family could reasonably have "expected in the future," account must be taken of the scale of compensation which prevailed in his profession after his death, whether that scale be higher or lower than that which previously existed. No California case has been cited by either party or discovered by the court which specifically discussed this precise question. The cases relied upon by defendants do not involve it. Simoneau v. Pacific Electric Ry. Co., supra, was concerned with changes in the physical condition of members of the decedent's family after his death. Cervantes v. Maco Gas Co., 177 Cal.App.2d 246, 2 Cal.Rptr. 75 (1960) is to the same effect. Stathos v. Lemich, supra, related to the admissibility of evidence as to the value of the decedent's estate which passed upon his death to his heirs. In the absence of any California authority directly in point, I must apply the general rule as laid down by the California decisions. That general rule seems to cover this case. There is no reason to believe that the California courts would create an illogical exception to that rule by holding that this particular "prospective benefit," i. e., a change in the prevailing rate of compensation, should not be considered. I hold therefore that regardless of whether New York or California law governs, the evidence of which defendants complain was properly admitted.

The third ground of defendants' motion is that there was insufficient evidence "as to the pecuniary loss to the decedent's survivors." Inasmuch as there was ample evidence as to the decedent's prospective earning power, defendants apparently mean by this contention that there was insufficient evidence as to the amount of his net earnings which decedent would have devoted to his family. This is the same ground as that urged in support of the motion for a directed verdict which has already been considered in this memorandum.

The fourth ground of the motion is that the amount of the verdict was excessive. On this issue the only question is whether the verdict was so high that it would be a miscarriage of justice to permit it to stand. Dagnello v. Long Island R. R., 289 F.2d 797 (2d Cir. 1961)

I am satisfied that it was not. The computations submitted by plaintiffs, which are based upon a conservative view of the evidence as to Kapell's prospective net income, after deducting income taxes from his earnings, show that the evidence would have justified a verdict of $525,096 for the years 1954 to 1963 and a verdict for the subsequent years, discounted on a four per cent basis, of $1,061,385, or a total of $1,586,481. These computations are based on the theory that 90 per cent of decedent's net income would have been devoted to his family. Even if one were to assume only a 75 per cent contribution, the total would still be $1,294,852, substantially in excess of the verdict. Defendants' motion is therefore in all respects denied.

Plaintiffs have moved to add pre-judgment interest to the verdict. Whether they are entitled to it or not depends upon whether New York law or California law governs this question. New York law requires the addition of such interest in a wrongful death action. New York Decedent Estate Law § 132. California law makes no provision for it. Cal.Code Civil Procedure § 377.

Since this is a diversity case, this court will apply the New York rule of conflict of laws. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The problem is to ascertain what the New York rule is.

Until Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), the New York law was clear that the question of pre-judgment interest in a wrongful death action is governed by the law of the state where the wrong occurred. The most recent New York decision so holding is Davenport v. Webb,

11 N.Y.2d 392, 230 N.Y.S.2d 17 (1962). The Court of Appeals of this Circuit has applied this principle of New York law in an action for wrongful death in which this court's jurisdiction was based on diversity of citizenship. Frasier v. Public Service Interstate Transp. Co., 254 F.2d 132 (2d Cir.1958).

The amended complaint (Paragraph Tenth in the present action), expressly based plaintiffs' claim on Section 377 of the California Code. The amended complaint was drawn in 1959, obviously in reliance upon the New York law of conflict of laws as it then stood.

In May 1963, the New York Court of Appeals in Babcock v. Jackson, supra, announced the "center of gravity" theory of conflict of laws in tort cases. The court stated the question before it as follows:

> "Shall the law of the place of the tort *invariably* govern the availability of relief for the tort or shall the applicable choice of law rule also reflect a consideration of other factors which are relevant to the purposes served by the enforcement or denial of the remedy?" (12 N.Y.2d 473, at 477, 240 N.Y.S.2d 743, at 746, 191 N.E.2d 279, at 280.)

The court's answer to this question was that the law of the place of the tort henceforth shall not invariably govern.

In Babcock, both plaintiff and defendant were New York residents. They were on a brief motor trip to Canada. Defendant drove the automobile and plaintiff was a passenger in it. While passing through Ontario they had an accident which caused injury to plaintiff. Under Ontario law a passenger in a motor vehicle may not sue the driver. New York law is to the contrary. The court held that New York law should be

applied to determine whether plaintiff had a right to sue, because New York had more "contacts" with and more "interest" in this question than Ontario. The court went on to say, however, that if it were a matter of the standard of care to be observed by automobile drivers, Ontario would have the "predominant concern" with this question and Ontario law would govern it.

Thus it appears that from now on in New York, certain substantive questions of tort law will be governed by the law of the situs and others by the law of the forum. It will doubtless require considerable time for the New York courts to complete the application of this new doctrine, and to determine which questions fall into the first category and which into the second.[3] As of this moment, they have not said what they will do with the question of pre-judgment interest in death actions. Babcock did not involve that question in any way, and the court there did not purport to overrule Davenport. In fact, it did not even mention it.

When the question does arise, I would think that logically the New York courts would place this question in the first category, i. e., that they would reaffirm Davenport and continue to hold that pre-judgment interest in death actions is to be governed by the law of the place of the tort. An action for wrongful death is a creature of statute, created by the statute of the state where the wrong occurred. This appears to be the view of the New York Court of Appeals expressed in Kilberg v. Northeast Airlines, 9 N.Y. 2d 34, 211 N.Y.S.2d 133 (1961), and repeated in Davenport. It would seem, therefore, that the statute which gives rise to the cause of action should also

---

3. *Defendants point to the fact that in Circle Line Sightseeing Yachts, Inc. v. Storbeck, 325 F.2d 338 (2d Cir. 1963), a case decided since Babcock, the Court of Appeals for the Second Circuit cited Davenport for the proposition that "the question of pre-judgment interest is considered by New York courts to be one of substantive law." To my mind this does*

*not help us solve the present problem, for there seems to be no doubt that the question of pre-judgment interest is a matter of substantive law. The problem is whether it is still considered by the New York courts to be the kind of substantive law question which is to be determined by the law of the situs.*

determine the damages, including pre-judgment interest, to be recovered upon that cause of action, unless, as in Kilberg, the public policy of the forum is in some way offended. This I understand to be the theory of Davenport, and I see no reason why that analysis should not continue to be valid under the New York rule and why the "center of gravity" for this particular question should not be the state where the tort occurred.

In any event, this is a problem for the New York courts to work out. The federal court does not create New York law, it merely endeavors to ascertain it and apply it in a diversity case. Since a mist of uncertainty now obscures an area which was formerly clear, it seems best to follow the old guideposts until new ones are erected, particularly where there is reason to believe that the old guideposts are still reliable for this particular path. I will therefore follow Davenport v. Webb, supra, and hold that California law applies to the question of pre-judgment interest in this particular case. Since under that law no such interest can be recovered, plaintiffs' motion is denied.

So ordered.